UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| THE EXTRADITION OF | ) | Case: 1:26-mj-000173 |
| | ) | Assigned To: Judge Harvey, G. Michael |
| PAUL XAVIER BONNICK | ) | Assign. Date: 9/30/2026 |
| a/k/a "BILLY HENDERSON" a/k/a | ) | Description: COMPLAINT W/ARREST WARRANT |
| "KEEM" a/k/a "PAUL GRANDISON" | ) | |
| a/k/a "ACE" a/k/a "RICHIE" | ) | |
| a/k/a "JAMAR STEPHEN" | ) | |

Affidavit
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligations Canada.

2. There is an extradition treaty in force between the United States and Canada.[1]

3. The Treaty provides, in Article 11, for the provisional arrest and detention of alleged fugitives pending the submission of a formal request for extradition and supporting documents.

4. In accordance with Article 11 of the Treaty, Canada has asked the United States for the provisional arrest of Canadian citizen Paul Xavier Bonnick a/k/a "Billy Henderson," "Xavier," "Keem," "Paul Grandison," "Ace," "Richie," "Jamar Stephen" ("BONNICK" or the "fugitive") pending the submission of a formal request for extradition and supporting documents.

[1] *See* Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, *as amended by* Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. TREATY DOC. NO. 101-17 (1990); *and* Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. TREATY DOC. NO. 107-11 (2002) (collectively, the "Treaty").

5. According to information from the Government of Canada, BONNICK is accused of second-degree murder, in violation of Canadian Criminal Code ("CCC") 235(1).[2] This offense was committed within the jurisdiction of Canada. On June 5, 2025, Staff Justice of the Peace in and for the Province of Manitoba, B. Rochon, issued a warrant for BONNICK's arrest.

6. Canada presents the following information as the basis for the complaint and arrest warrant:

a. Witness testimony and video surveillance records reflect that on or about May 23, 2025, BONNICK exited his apartment at 102-366 Qu'Appelle Street, Winnipeg, Manitoba, Canada, on foot, armed with a semi-automatic handgun. BONNICK encountered a group of five people outside the apartment building – Ralph Moise ("Moise"), Chastity Oigg ("Oigg"), Rodney Moise, Alexander Shorting, and Dayna Ryle. A verbal dispute commenced between BONNICK and the group, at which time BONNICK produced and shot the handgun several times into the group, striking Oigg's leg. Video surveillance footage from Manitoba Housing captured the incident. BONNICK fled on foot.

b. According to witnesses and video surveillance, Moise chased BONNICK and encountered him approximately one block away, in the area of 352 Cumberland Avenue. Moise was holding a knife. BONNICK produced his handgun again and

[2] According to Canadian authorities, BONNICK is also accused of discharging a restricted firearm in a reckless manner, in violation of CCC 244.2(1)(b). The instant Complaint, however, focuses on information Canada has provided concerning violation of CCC 235(1) and asks the Court to provisionally detain BONNICK on the basis of that information, without prejudice to proceeding on additional charges when Canada's formal request for extradition has been received and reviewed by the U.S. Department of State and is presented to the Court.

fatally shot Moise twice in the chest. Although BONNICK moved just outside of the video frame when Moise was shot, video surveillance captured the flash and audio of the gunshot. Canadian law enforcement recovered a total of twelve 10 mm bullet casings from the area of the shooting.

c. The day after the murder, BONNICK booked flights from Winnipeg to Toronto, and onward to Jamaica, where Canadian law enforcement believe BONNICK has family ties. BONNICK did not appear for the flights.

d. BONNICK's banking records reflect that in the days, weeks, and months after the murder, BONNICK received multiple, large e-transfer deposits to his account, before the account was closed on September 17, 2025.

e. BONNICK's cell phone records and tracking data reflect that between May 27, 2025 and May 29, 2025, BONNICK had frequent conversations with his girlfriend, McKinley Buswa-Virta ("Buswa-Virta") and was in the vicinity of her address in Ontario. On June 6, 2025, BONNICK's phone was disconnected.

f. Although U.S. law enforcement has no record of BONNICK legally entering the United States since the shooting, on or about September 21, 2025, U.S. law enforcement observed BONNICK entering his biological father's home in Atlanta, Georgia.

g. On May 18, 2026, Buswa-Virta was involved in a dispute with a man who had hired Buswa-Virta for her services. The Roswell Police Department in Georgia interviewed Buswa-Virta, who provided a false address in Atlanta. On social media, Buswa-Virta has posted multiple photos of herself in Atlanta.

Additionally, Buswa-Virta has an active "Onlyfans" account, where she has listed herself as available for appointment in Atlanta.

h. On August 27, 2026, Buswa-Virta posted a video story to her Instagram account. The video was captured by a black male whose arm and chest are visible in the video. Canadian investigators note that the body structure and skin color of the male taking the video match that of BONNICK in the above-described video footage.

i. U.S. law enforcement has no record of BONNICK departing the United States and believes BONNICK is located somewhere in the United States. However, U.S. law enforcement has been unable to ascertain BONNICK's exact location.

<u>Identification of the Fugitive</u>

j. The request includes two photographs that the Toronto Police Service indicate match the video surveillance at the time of the murder. The first photo is from Toronto Police files. The second photo is a still image from video surveillance of BONNICK visiting a liquor store approximately five hours before he killed Moise. Further, Canadian law enforcement have confirmed that BONNICK presented his passport at the liquor store to gain entry. Additionally, Canadian authorities obtained BONNICK's fingerprints from a liquor bottle they found at his residence and confirmed in the Automated Fingerprint Identification System (AFIS) that these are a match for BONNICK.

7. Article 2 of the Treaty covers the offense of which BONNICK is accused.

8. Canada has represented that it will submit a formal request for extradition within

60 days of BONNICK's provisional arrest, as the Treaty requires.

WHEREFORE, the undersigned requests that a warrant for the fugitive's arrest issue in accordance with 18 U.S.C. § 3184 and the Treaty, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered.

Iris McCranie
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 30th day of September 2026, in the District of Columbia.

Honorable G. Michael Harvey
United States Magistrate Judge
U.S. District for the District of Columbia